IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.:

UNITED STATES SECURITIES
AND EXCHANGE COMMISSION,

        Plaintiff,

v.

KRISTINE L. JOHNSON,
TROY A. BARNES, and
WORK WITH TROY BARNES, INC. (d/b/a THE ACHIEVE COMMUNITY),

        Defendants,

and

ACHIEVE INTERNATIONAL, LLC,

        Relief Defendant.

## COMPLAINT

Plaintiff United States Securities and Exchange Commission ("Commission" or "SEC") alleges as follows against Defendants Kristine L. Johnson ("Johnson"), Troy A. Barnes ("Barnes"), and Work With Troy Barnes, Inc. ("WWTB") (collectively, "Defendants"), and Relief Defendant Achieve International, LLC ("Achieve International").

### I.   SUMMARY

1.  This SEC enforcement action involves an ongoing fraudulent Ponzi scheme conducted by Johnson and Barnes, through WWTB, an entity they founded and which does business as "The Achieve Community" ("TAC").

2.     Since approximately April 2014, Defendants have raised more than $3.8 million from investors primarily through videos and promotional materials posted on Internet websites. Through their marketing efforts, Defendants entice investors to buy "positions" in TAC and earn extraordinary investment returns of 700 percent. Defendants claim that TAC generates its extraordinary investment returns through a "triple algorithm" that Johnson and Barnes developed. Defendants further claim TAC is a long-term, stable program that will generate "limitless," "lifetime" returns. Defendants portray these investments as legitimate, going so far as to expressly disclaim that TAC is a pyramid scheme.

3.     In reality, TAC is a pure Ponzi and pyramid scheme. Early investors are paid their purported investment returns from the funds of newer investors. Indeed, TAC has no legitimate business operations; the only available funds to pay the promised investment returns come from new investors lured into the scheme.

4.     In addition to operating a Ponzi and pyramid scheme, Defendants have also misappropriated at least $200,000 in investor funds for their own personal use, including to buy a new car and to pay personal credit card bills. Further, Defendants have siphoned investor funds to an account held by Relief Defendant Achieve International, and have then misappropriated funds out of that account.

5.     As a result of the conduct described herein, Defendants Johnson, Barnes, and WWTB have violated the anti-fraud provisions of the federal securities laws. Specifically, Defendants have engaged in a scheme to defraud, and have thus violated and unless restrained and enjoined will continue to violate Section 17(a)(1) and (3) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], Section 10(b) of the Securities Exchange Act of 1934

("Exchange Act") [15 U.S.C. 78j(b)], and Rule 10b-5(a) and (c) thereunder [17 C.F.R. § 240.10b-5]. Defendants have also made materially misleading statements and omissions, and have thus violated and unless restrained and enjoined will continue to violate Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. 78j(b)], and Rule 10b-5(b) thereunder [17 C.F.R. § 240.10b-5].

## II.   JURISDICTION AND VENUE

6. The Court has jurisdiction pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d) and (e) and 78aa]. The Defendants, directly or indirectly, made use of the means or instrumentalities of interstate commerce, or of the mails, or the means or instruments of transportation or communication in interstate commerce, in connection with the acts, practices, and courses of business set forth in this Complaint.

7. Venue lies in this Court pursuant to 15 U.S.C. §§ 77u(a) and 78aa and 28 U.S.C. § 1391(b)(2). Relief Defendant Achieve International is a Colorado limited liability company with its principal place of business in Aurora, Colorado, Defendant WWTB maintains one of its principal places of business in Aurora, Colorado, and Defendant Johnson is a resident of Aurora, Colorado. In addition, many of the acts and practices described in this Complaint occurred in the District of Colorado.

## III.   DEFENDANTS

8. **Work With Troy Barnes, Inc. d/b/a The Achieve Community** is a Delaware corporation with its principal places of business in Aurora, Colorado and Riverview, Michigan. On information and belief, Barnes and/or Johnson incorporated WWTB in March 2014, and

branded the entity as The Achieve Community shortly thereafter. TAC is a trade name or d/b/a for WWTB. TAC's website states that WWTB owns the website's copyright. WWTB, through its agents, Johnson and Barnes, operates the TAC website on which various TAC videos and promotional materials are published. Further, WWTB's bank accounts are used to handle TAC investor funds.

9. **Kristine Louise Johnson**, age 60, is a resident of Aurora, Colorado. Johnson is one of the two founders of TAC, and handles the majority of TAC's finances. Johnson is an authorized agent of WWTB and has acted as the sole signatory on at least three bank accounts that she opened in the name of WWTB. Johnson formed Achieve International as a Colorado entity, is an authorized agent of Achieve International, and, on information and belief, is the sole member, and managing member, of Achieve International. Johnson has acted as the sole signatory on at least one bank account that she opened in the name of Achieve International. Johnson is a former registered representative, and was last associated with a registered entity in 1996.

10. **Troy Alex Barnes**, age 52, is a resident of Riverview, Michigan. Barnes is one of the two founders of TAC, and has posted at least eighteen videos on the internet promoting TAC. On information and belief, Barnes is either an officer, director, and/or shareholder of WWTB and is authorized to act as an agent on its behalf.

## IV.   RELIEF DEFENDANT

11. **Achieve International, LLC** is a Colorado limited liability company with its principal place of business in Aurora, Colorado. Johnson formed Achieve International in

October 2014. Like WWTB, Achieve International's bank accounts are used to handle investor funds involved in the TAC scheme.

## V. FACTS

**A.     Johnson and Barnes form TAC**

12.     Johnson and/or Barnes incorporated WWTB in Delaware in March 2014, and shortly thereafter re-branded the effort as TAC. TAC does not exist as a legal entity separate from WWTB.

13.     In October 2014, after TAC began to receive significant investor funds, Johnson formed Achieve International. TAC investor funds have been deposited in accounts associated with both WWTB and Achieve International.

14.     TAC promotes itself through various online channels, including its own website. These promotional materials focus on enticing individuals to invest money with the promise of significant returns – a scheme described in more detail below. TAC also nominally offers investors access to certain online marketing materials and online banner advertisements. However, investors are not required to access or use these marketing materials in order to receive their investment return. Indeed, investors are not required to do anything other than invest money to generate the promised investment returns.

**B.     TAC's Fraudulent Scheme**

15.     From approximately April 2014 through the present, TAC has offered and sold "positions" in TAC to investors. These "positions," which are securities, promise investors a significant return on their investment.

16. Johnson and Barnes are primarily responsible for conducting TAC's offering. In various videos and promotional materials on TAC's website and other online channels, Johnson and Barnes solicit investors to purchase "positions" in TAC, which cost $50 each. In return, investors are promised they will receive a $400 pay-out – a return of 700%. Investors are encouraged to purchase more "positions" so that they can purportedly earn more money.

17. TAC's website, www.readytoachieve.com, solicits investors with the following pitch:

> Now you and anyone you know can Make as Much Money as you want. You start with a $50 position, each $50 position pays you $400 and you can Purchase as many positions as you want.

18. Similarly, in a short video on the TAC website narrated by Johnson, Johnson claims that TAC is a "lifetime income plan," and continues:

> How are we a lifetime income plan? It's simple. Every $50 position you purchase, you make $400. With two positions, you make $800. With five positions, you make $2,000. Want to go bigger? With twenty positions, you make $8,000. With one hundred positions, you make $40,000. This is limitless.

19. Barnes makes similar claims that investors can generate significant, long-term income. For example, in an online video touting TAC, Barnes claims that TAC "will teach you how to take $50 and turn it into thousands of dollars, and that's a fact." He claims investors can "make as much money as you want." And he claims that TAC has "amazing" stability and that the program will continue long into the future. In another online video, he claims that the number of members being paid is going to double in two months, "I guarantee it."

20. TAC claims that it is able to pay out these investment returns as a result of a "triple algorithm" and "matrix" that Johnson and Barnes created.

6

21.	TAC's website contains a recording of a "conference call" discussion between Johnson and Barnes, moderated by a TAC promoter. During the discussion, Johnson and Barnes are asked by a TAC promoter to explain the algorithm that purportedly drives TAC's success. Johnson claims that, after considering what did not work with other investment programs, that one day she envisioned a "triple algorithm" and "3-D" matrix:

> I thought, what can I do, what can I make, what can I design, that has only what works and none of what doesn't, and one day, honestly this is what happened, I just saw it. I just saw it in my head. This matrix is 3D, which is why we can't put it on paper. It's a triple algorithm. And I can't for the life of me tell you why I could figure that out in my head. But I could."

Johnson claims this matrix was the "little secret ingredient" behind TAC's success. Barnes then claims he hired a seasoned programmer who spent three months perfecting the "triple algorithm" investment formula. Barnes concludes by claiming that the "triple algorithm" works, that "we're paying out loads of money," and that "as we grow it's going to be in the hundreds of thousands. It's going to be amazing."

22.	TAC's website further states that, while not guaranteed, investors can generally expect to receive their investment returns in three to six months.

23.	Johnson makes similar statements about the time of investment returns on the recorded "conference call." Johnson states that, at the current pace, it will take roughly six months for an investor to receive her 700% return, but that as the program participation increases, the time to generate returns will likely decrease to as little as three months.

24.	Investors are also encouraged to keep their investment returns with TAC, through a so-called "Re-Purchase" strategy.

25.     In a short video on TAC's website, again narrated by Johnson, Johnson encourages investors to repurchase new "positions" with their investment returns rather than taking money out of TAC. Johnson explains that by purchasing one $50 "position," and then using the $400 investment return to repurchase 8 positions, the investor would earn $3,200. Johnson goes on to explain that, if the investor used the repurchase strategy again, she would then have 64 positions worth more than $25,000. Johnson states that this strategy will "give you the same income over and over again, forever."

26.     Barnes makes similar statements about TAC's "Re-Purchase" strategy. For example, in a video posted online touting TAC, Barnes states that investors can repurchase more "positions" to make more money. In another online video, Barnes claims that, with the "Re-Purchase" strategy, it is "very easy to make six figures."

27.     In addition to the TAC website content, investors can access dozens of videos that Barnes and other promoters have posted online. Many of the videos repeat the same message described above. Moreover, these videos further entice investors by stating that the TAC program will provide income security and will solve investors' financial problems.

28.     Notably, TAC expressly disclaims being an improper pyramid or Ponzi scheme. Indeed, in a short video on the TAC website narrated by Johnson explaining TAC, Johnson announces "what we are not… *We are not a pyramid scheme*."

**C.     TAC is a Ponzi and Pyramid Scheme**

29.     Contrary to TAC's explicit representation, TAC is a pure Ponzi and pyramid scheme. Earlier investors are paid their returns from the funds of newer investors. Similarly, investors must wait to progress through the "matrix" before their returns are paid to them.

30. From the outset, TAC's revenue has consisted entirely of investor-contributed funds. Johnson and Barnes have made no effort to generate profits from any legitimate business operations from which they could repay earlier investors. Instead, the sole source of repayments to earlier investors is funds contributed by newer investors.

31. To date, investors have invested approximately $3.8 million in TAC "positions."

32. Defendants' scheme used means of interstate commerce. For example, TAC solicits investors through its website and other internet videos. Further, investors are directed to purchase "positions" with credit cards through a web-based payment platform

**D.   Johnson and Barnes Have Misappropriated Investor Funds**

33. In addition to making Ponzi payments to investors, Defendants have misappropriated investor funds for Johnson and Barnes' own personal use.

34. On more than a dozen occasions, Johnson made significant cash withdrawals or wrote checks to "Cash" from the WWTB and Achieve International accounts, and made corresponding cash payments to her personal accounts.

35. Johnson used these investor funds to pay her personal expenses, including paying nearly $35,000 in cash for a new car, and making personal credit card payments.

36. To date, Johnson has misappropriated at least $150,000 in investor funds.

37. Similarly, Barnes has misappropriated investor funds. Using thirteen separate transfers reflected on WWTB bank statements as "Visa Paypal *Troy Barnes," Johnson transferred approximately $40,000 to Barnes.

**E.     Defendants Engaged in a Scheme and Fraudulent Practices or Courses of Business to Defraud TAC Investors**

38.     Since at least April 2014, Defendants have engaged in a scheme to defraud TAC investors.

39.     Defendants perpetrated their scheme by, among other things, operating a fraudulent Ponzi and pyramid scheme, making Ponzi payments to investors, misappropriating investor funds for Johnson and Barnes' personal use, and making the misstatements and omissions described herein.

40.     In furtherance of the scheme, Johnson engaged in numerous practices or courses of business that defrauded TAC investors, including but not limited to:

   a. Operating TAC as a Ponzi and pyramid scheme;

   b. Creating and maintaining a website used as a venture to distribute false and misleading statements and to facilitate the receipt of investor funds;

   c. Paying earlier investors with funds from newer investors;

   d. Misappropriating investor funds for her personal use;

   e. Misappropriating investor funds for Barnes' personal use; and

   f. Making material misrepresentations and omissions, described in detail below.

41.     Johnson's actions in furtherance of the scheme were knowing or reckless. Alternatively, Johnson's actions in furtherance of the scheme resulted from her negligence.

42.     In furtherance of the scheme, Barnes also engaged in numerous practices or courses of business that defrauded TAC investors, including but not limited to:

   a. Operating TAC as a Ponzi and pyramid scheme;

      b. Creating and maintaining a website used as a venture to distribute false and misleading statements and to facilitate the receipt of investor funds;

      c. Paying or attempting to pay earlier investors with funds from newer investors;

      d. Misappropriating investor funds for his personal use; and

      e. Making material misrepresentations and omissions, described in detail below.

43. Barnes' actions in furtherance of the scheme were knowing or reckless. Alternatively, Barnes' actions in furtherance of the scheme resulted from his negligence.

44. In furtherance of the scheme, WWTB, which does business as and is a trade name for TAC, also engaged in numerous practice or courses of business that defrauded TAC investors through the acts of its agents, Johnson and Barnes, including but not limited to:

      a. Operating as a Ponzi and pyramid scheme;

      b. Creating and maintaining a website used as a venture to distribute false and misleading statements and to facilitate the receipt of investor funds;

      c. Paying earlier investors with funds from newer investors;

      d. Misappropriating investor funds for Johnson and Barnes' personal use; and

      e. Making material misrepresentations and omissions, described in detail below.

45. WWTB's actions in furtherance of the scheme were knowing or reckless. Alternatively, WWTB's actions in furtherance of the scheme resulted from its negligence.

**F. Defendants Made False, Fraudulent, and Material Misrepresentations and Omissions in Connection with the TAC Securities Offering**

46. In raising funds from investors and convincing investors to continue to invest, Defendants made numerous, material misrepresentations and omissions regarding TAC's operations and financial condition, and the use of investor funds.

47.     As detailed below, Johnson and Barnes personally made numerous misrepresentations and omissions.

48.     In addition, WWTB, Johnson, and Barnes each share ultimate authority for all statements made in promotional materials published on TAC's website. Johnson and Barnes are the co-founders of TAC, and are responsible for its operations. WWTB, which does business as TAC, operates the website on which various misstatements and omissions were published. WWTB is liable for the statements of its agents, Johnson and Barnes. In addition, Johnson and Barnes are liable for statements specifically attributed to each of them.

### i.    Material Misrepresentations and Omissions Regarding Investment Returns and Ponzi Payments

49.     Defendants made material misrepresentations and omissions regarding TAC's investment returns and Ponzi payments.

50.     Numerous times in videos and other promotional materials on TAC's website and other online channels, Defendants have described TAC's purported operations and investment returns. For example, as described in detail above, Johnson claims TAC is a "lifetime income plan" with "limitless" opportunities for investment returns. Similarly, Barnes claims that TAC has amazing stability, and that the program will continue long into the future. Johnson also claims that TAC is able to pay investment returns as a result of a "triple algorithm" and "matrix"; Barnes claims he hired a developer who spent three months developing the "triple algorithm."

51.     In the numerous videos and other promotional materials posted on TAC's website and other online channels describing the TAC program, Defendants omitted to inform investors that TAC was functioning as a Ponzi scheme.

52. Indeed, TAC expressly disclaimed being an improper pyramid or Ponzi scheme. In a short video on the TAC website narrated by Johnson explaining TAC, Johnson announces "what we are not… *We are not a pyramid scheme*."

53. Each of these representations and omission to investors was false and misleading because, since its inception, TAC has operated as a Ponzi and pyramid scheme, and has repaid investors, not as a result of a "triple algorithm," but by making Ponzi payments to other investors.

54. These misrepresentations and omissions were material to investors because investors believed TAC was not a pyramid scheme, and that the payment of their investment return was not dependent on future investor funds coming into the scheme.

55. Defendants each knew or were reckless in not knowing, or alternatively were negligent in not knowing, that misrepresentations and omissions regarding TAC's use of investor proceeds and Ponzi payments were materially false and misleading.

### ii. Material Omissions Regarding Misappropriation of Investor Funds

56. Defendants also made material omissions about their misappropriation of investor funds.

57. Defendants often touted the friendly, community nature of TAC. For example, in a short video posted on TAC's website, narrated by Johnson, Johnson states that TAC is "a group of people that want to help each other, ourselves, and the people we care about to achieve the lifestyle and financial freedoms that we've always dreamed about." Similarly, in a video posted online touting TAC, Barnes claims that he and Johnson founded TAC "to help a whole lot of

13

people." In another online video, Barnes claims that "we're just here to help you and to help you make a whole lot of money."

58.     In the numerous videos and other promotional materials posted on TAC's website and other online channels describing the TAC program, Defendants omitted to state that Johnson and Barnes were using investor funds for their personal benefit.

59.     These omissions were material to investors because investors believed their funds were being put to use in the TAC program, not to fund Johnson and Barnes' personal expenses.

60.     Defendants each knew or were reckless in not knowing, or alternatively were negligent in not knowing, that omissions regarding their personal use of investor funds were materially false and misleading.

**G.     TAC "Positions" Are Securities**

61.     The "positions" in TAC that Defendants offered and investors purchased are securities under federal law.

62.     When an investor purchases a "position," his or her individual funds are pooled with all other investor funds.

63.     Investors are not required to take any action in order to earn the returns on their "positions." Rather, investors expect their returns to be generated by the efforts of the individuals running TAC.

**H.     Achieve International Received Ill-Gotten Gains from the Scheme**

64.     Achieve International has received ill-gotten funds from this ongoing scheme. Specifically, Johnson has deposited fraudulently-raised investor funds into one or more bank

accounts controlled by Achieve International. Achieve International has no legitimate claim to the funds.

## VI.   CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Fraud in the Offer or Sale of Securities
### Violations of Securities Act Section 17(a) [15 U.S.C. § 77q(a)]
### (Against All Defendants)

65. Paragraphs 1 through 64 are re-alleged and incorporated herein by reference.

66. Defendants WWTB, Johnson, and Barnes, directly or indirectly, in the offer and sale of securities, by use of the means or instruments of transportation or communication in interstate commerce, or of the mails: (a) employed a device, scheme or artifice to defraud with scienter; (b) obtained money or property by means of untrue statements of material fact or by omitting to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in transactions, practices, or courses of business that operated or would operate as a fraud or deceit upon the purchasers of such securities.

67. By reason of the foregoing, Defendants WWTB, Johnson, and Barnes violated, and unless enjoined will continue to violate, Section 17(a) of the Securities Act [15 U.S.C. §§ 77q(a)].

### SECOND CLAIM FOR RELIEF
### Fraud in the Purchase or Sale of Securities
### Violations of Exchange Act Section 10(b) and Rule 10b-5
### [15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5]
### (Against All Defendants)

68. Paragraphs 1 through 64 are re-alleged and incorporated herein by reference.

69. Defendants WWTB, Johnson, and Barnes, directly or indirectly, with scienter, by use of the means or instruments of interstate commerce, or of the mails, or of a facility of a national securities exchange, in connection with the purchase or sale of a security: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices or courses of business which operated or would have operated as a fraud or deceit upon any person.

### THIRD CLAIM FOR RELIEF
### Equitable Disgorgement
### (Against Relief Defendant)

70. Paragraphs 1 through 64 are re-alleged and incorporated herein by reference.

71. Relief Defendant Achieve International obtained money, property, and assets as a result of the violations of the securities laws by Defendants WWTB, Johnson, and Barnes, to which Achieve International has no legitimate claim.

72. Achieve International should be required to disgorge all ill-gotten gains which inured to its benefit under the equitable doctrines of disgorgement, unjust enrichment and constructive trust.

### VII.   PRAYER FOR RELIEF

WHEREFORE, the SEC respectfully requests that the Court:

1. Find that each of the Defendants committed the violations alleged in this Complaint;

2. Enter an Injunction, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, temporarily, preliminarily, and permanently restraining and enjoining each of the Defendants from violating the laws and rules alleged against them in this Complaint;

3. Order that each of the Defendants and the Relief Defendant disgorge any and all ill-gotten gains, together with pre-judgment and post-judgment interest, derived from the activities set forth in this Complaint;

4. Order that each of the Defendants pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)]; and

5. Grant such other relief as this Court may deem just or appropriate.

## VIII.   JURY DEMAND

The Commission demands a jury in this matter.

DATED: February 12, 2015.

Respectfully submitted,

s/Nicholas P. Heinke
Nicholas P. Heinke
Gregory A. Kasper
Attorneys for Plaintiff
U.S. Securities and Exchange Commission
1961 Stout Street, Suite 1700
Denver, CO 80294-1961
(303) 844-1071 (Heinke)
(303) 844-1026 (Kasper)
HeinkeN@sec.gov
KasperG@sec.gov