IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.:

UNITED STATES SECURITIES
AND EXCHANGE COMMISSION,

Plaintiff,

v.

KRISTINE L. JOHNSON,
TROY BARNES, and
WORK WITH TROY BARNES, INC., (d/b/a THE ACHIEVE COMMUNITY)

Defendants,

and

ACHIEVE INTERNATIONAL, LLC,

Relief Defendant.

---

## DECLARATION OF JEFFREY D. FELDER

---

I, JEFFREY D. FELDER, do hereby declare under penalty of perjury, in accordance with 28 U.S.C. § 1746, that the following is true and correct, that I am over 18 years of age and I am competent to testify to the matters stated herein:

1. I am an attorney and have been licensed in Colorado since 2006. I am employed in the Division of Enforcement in the Denver Regional Office of the Securities and Exchange Commission (the "SEC") and hold the title of Counsel.

2. Among other things, the federal securities laws authorize the SEC to conduct investigations to determine whether federal securities laws have been violated and to bring civil actions before the United States District Courts to enforce and secure compliance with those laws.

3. As part of my job duties, I am responsible for investigating securities laws violations.

4. My investigations generally include sending subpoenas, taking testimony, and conducting other investigative activities, as well as drafting internal legal analyses and preparing cases for litigation.

5. I was assigned to investigate a matter captioned In the Matter of The Achieve Community (D-03502). As a result of that investigation, among other things, the SEC has authorized this action seeking the relief specified in the SEC's Motion to which this Declaration is an exhibit.

**Background of The Achieve Community**

6. In January, 2014, I was asked to review a possible investment fraud known as The Achieve Community ("TAC").

7. As part of my investigation, I reviewed a number of sources of information including information on the internet, bank statements, and information from third-parties connected to TAC.

8. Based on tips that the SEC received, I had reason to believe that an entity called TAC was selling securities in a manner that violated the securities laws.

9. As one of the initial steps in my investigation, I conducted an internet search for "The Achieve Community."  Doing so revealed two websites associated with TAC: www.theachievecommunity.com and www.readytoachieve.com.

10. The content on these two websites is similar, but not identical.

11. At the bottom of www.readytoachieve.com, the website states that the content is subject to a copyright held by Work With Troy Barnes, Inc. ("WWTB").

12. A review of corporate records revealed that WWTB is a Delaware corporation that was formed on March 24, 2014.  WWTB operates from Aurora, Colorado and Riverview, Michigan.

13. I conducted a diligent search to identify the state of formation for TAC but was not able to locate any record of TAC existing as a legal entity.  Accordingly, based on the fact that TAC does not exist as its own legal entity, it appears to be a "trade name" or a "doing business as" name for WWTB.  Since WWTB and TAC are one and the same, I will use TAC throughout this Declaration to generally describe the investment scheme operated by Defendants, but any reference to TAC also includes WWTB as the real entity in interest.

14. Featured prominently on the TAC websites are two individuals identified as the "Founders" of TAC: Troy Barnes ("Barnes") and Kristi Johnson ("Johnson").  A true and correct copy of the "Home" page from www.readytoachieve.com, along with a declaration from Russell Castillo, the SEC employee who preserved the www.readytoachieve.com website, is attached as **Exhibit A**.

3

15. Based on research that I conducted, I have confirmed the accuracy of the following information regarding Barnes and Johnson:

    a. **Kristine Louise Johnson**, age 60, is a resident of Aurora, Colorado. Johnson is identified on the TAC websites as one of the two founders of TAC, has recorded promotional videos featured on TAC's websites, and handles a significant portion of TAC's finances. Johnson is a former securities industry registered representative and was last associated with a registered entity in 1996. Johnson held a Series 7 license at the time of her association with her securities industry employers, which was from 1993 to 1996.

    b. **Troy Alex Barnes**, age 52, is a resident of Riverview, Michigan. Barnes is identified on the TAC websites as one of the two founders of TAC, is involved in TAC's operations and finances, and has posted at least eighteen videos on the internet promoting TAC.

## The Achieve Community's Fraudulent Investment Offering

16. TAC and its founders, Barnes and Johnson, promote TAC both on the TAC websites and also through social media websites, including Facebook and YouTube. Barnes recorded eighteen YouTube videos promoting TAC.

17. As described by TAC on its websites and in promotional videos, the scheme works as follows: (1) individuals make investments in TAC by purchasing "positions" for $50; (2) TAC tells each investor that he or she will receive $400 in return for purchasing each "position," which equates to a 700% investment return; (3) positions exist in something

called the "matrix," which is used to determine when investors will be paid; (4) investors are encouraged to repurchase positions in the scheme which will supposedly allow them to make more money; and (5) investors are not required to do anything other than purchase "positions" to earn these promised returns: they are not required to sell any product or recruit additional investors.

18. Investors purchase positions by navigating to a payment portal on TAC's websites where they are asked to enter their credit/debit card or other electronic payment information. This is the only method for investing in TAC.

19. The TAC websites do not explain how the "matrix" functions, but in a recorded investor conference call featuring Johnson and Barnes, which is accessible on the "home" page of www.readytoachieve.com, Johnson and Barnes explain that Johnson created the "matrix" which is "3D" and is a "triple algorithm" that she conceived in her head. (*See also* Ex. D to the Decl. of H. Engelhart.)

20. The TAC websites do not identify any particular investment strategy that will lead to the promised 700% return. For instance, the TAC websites do not state that investor money will be invested in a particular asset class or that it will be used for other revenue generating purposes.

21. Although the TAC websites do not guarantee the 700% return within a particular time frame, Johnson has stated that investors can expect returns in as little as three to six months.

22. The TAC website also states that investors who purchase $50 positions will be given access to a password restricted area of the TAC website where they can access a library of online marketing materials, including web banners. As this area is password protected, I was not able to access it because it is SEC policy to not access restricted websites using an investor's credentials. Additionally, because of the emergency nature of this filing, and the need to not alert Defendants of the investigation, the SEC has not yet sought information relating to this password restricted area by subpoena.

23. Although I was unable to review the password protected area of the TAC website, from reviewing information that was publicly accessible my understanding is that the marketing materials in the password protected area are not for resale, and do not generate any revenue for TAC. They are merely available for TAC investors to use, if they so choose. Investors are not required to access or otherwise use these materials to participate in the investment scheme.

24. The focus of TAC's marketing is on the investment opportunity and the extraordinary returns, not the availability of marketing materials. Additionally, it appears that the marketing materials are geared towards helping people further promote the scheme through online marketing of TAC.

25. Based on my review of all of the information that TAC supplied to the investing public, I was unable to determine any source of revenue for TAC other than contributions from investors.

26. After reviewing the information above, it appeared to me that Johnson and Barnes, through TAC, were advertising an investment program that generated no revenue through investment of investor funds. Rather, it appeared that Johnson and Barnes were potentially using investor funds from newer investors to repay existing investors.

27. Based on the promised level of return of 700%, such a scheme would be unsustainable. Schemes of this nature are described as pyramid schemes, although in this case TAC also appear to be a Ponzi scheme in that new investor money is used to repay existing investors, as is confirmed by the evidence discussed below.

**Bank Records Confirm the Fraudulent Nature of the Investment Offering**

28. Through an investigator with the Colorado Division of Securities ("CO DOS"), I learned that Johnson told CO DOS during an interview on January 13, 2015 that WWTB d/b/a TAC banked at FirstBank.

29. Accordingly, I obtained and reviewed bank records that were produced by FirstBank on February 2, 2015.

30. The FirstBank bank records were for four accounts, three in the name of Work With Troy Barnes, Inc. and one in the name of Achieve International, LLC.

31. Achieve International, LLC is a Colorado LLC that Kristine L. Johnson formed on October 26, 2014, with its principal place of business in Aurora, Colorado.

32. After obtaining the bank records, Kerry Matticks, a Staff Accountant with the SEC, scheduled the records in spreadsheets to identify the movement, sources, and uses of funds. In a separate Declaration, Mr. Matticks has described the account activity.

33. Based on the bank records, which I reviewed myself, as well as Mr. Matticks's analysis, I identified the following facts:

    a.  The Work With Troy Barnes, Inc. account ending in 0314 was opened at FirstBank on April 2, 2014, and the only authorized signatory for the account is Kristine L. Johnson.

    b.  The Work With Troy Barnes, Inc. account ending in 5343 was opened at FirstBank on November 5, 2014, and the only authorized signatory for the account is Kristine L. Johnson.

    c.  The Work With Troy Barnes, Inc. account ending in 6428, was opened at FirstBank on November 13, 2014, and the only authorized signatory for the account is Kristine L. Johnson.

    d.  The Achieve International, LLC account ending in 6401, was opened at FirstBank on November 13, 2014, and the only authorized signatory for the account is Kristine L. Johnson.

**FirstBank Deposits (credits)**

34. For deposits, the FirstBank records contain transactions that can be grouped into three categories: (1) account transfers between the four accounts; (2) investor funds; and (3) miscellaneous.

    a.  **Account transfers.** Account transfers between the four accounts were frequent, occurring a dozen times between November 5, 2014 (when the second account was opened) and February 2, 2015 (when FirstBank produced the records). The

8

account transfers do not appear to be for any discernible legitimate business purpose.

b. **Investor funds.** Investor money enters the scheme by credit card and other electronic payments from investors. Those payments are made through a payment page on the TAC websites, and are processed by merchant services companies that allow online businesses to accept online payments via credit cards, debit cards, and through other electronic payment methods. There are two entities that I identified through the FirstBank records that served as investor payment acceptance companies for TAC: Stripe and iPayDNA. I further confirmed the nature of the services that these companies offer through additional investigation.

   i.  <u>Stripe</u> processed and deposited $3,434,072.38 worth of investor funds into the FirstBank accounts.

   ii. <u>iPayDNA</u> processed and deposited $396,053.82 worth of investor funds into the FirstBank accounts.

   iii. In sum, the investor funds contributed to TAC are no less than **$3,829,926.20**.

c. **Miscellaneous.** All told, the miscellaneous deposits to the four accounts amount to slightly over $25,000 and are therefore not significant when compared to the other deposits.

35. Based on my review of the deposits to the four accounts, the only source of revenue is funds contributed by investors.

**FirstBank Withdrawals (debits)**

36. For withdrawals, the FirstBank records contain transactions that can be grouped into five categories: (1) account transfers between the four accounts; (2) payments to investors; (3) payments to cash/Johnson; (4) payments to Barnes; and (5) miscellaneous and ScottTrade.

   a. **Account transfers.** The account transfers are described above in the section discussing deposits.

   b. **Payments to investors.** Investor money exits the scheme by transfers to electronic payment processors. Those payment processors issue pre-loaded debit cards to investors who Johnson and Barnes identify to receive funds. There are two entities that I identified through the FirstBank records that served as investor payment distribution companies for TAC: Payoneer and Binary Wallet (identified in the banking records as Aerapay or Aerapass, Ltd.). I further confirmed the nature of the services that these companies offer through additional investigation.

      i. Payoneer received a net amount of $1,408,220.64 worth of investor funds which was then processed and distributed to investors, less fees charged by Payoneer for its services.

      ii. Binary Wallet received a net amount of $840,900.00 worth of investor funds which is slated for distribution to investors, less fees charged by Binary Wallet for its services. As of today, these funds may not yet have been distributed.

iii. In sum, the investor funds returned or slated for return to investors, are **$2,249,120.64**.

c. **Payments to cash/Johnson.** The bank records indicate that on at least thirteen occasions, Johnson went to a FirstBank branch and withdrew cash in the form of currency, or cash in the form of a check written to "cash." Virtually all of these funds ended up in an account at the Credit Union of Colorado ("CU of CO") that is Johnson's personal account. Mr. Matticks has summarized these withdrawals in his Declaration, and the withdrawals that could be tied to deposits at CU of CO total **$153,300.00**.

d. **Payments to Barnes.** The bank records contain thirteen transfers to an account identified as "Visa Paypal *Troy Barnes." In total, Johnson transferred **$39,550.00** to Barnes.

e. **Miscellaneous and ScottTrade.** The miscellaneous withdrawals amount to $55,380.11. The largest withdrawals in the category were: payments to Compusult of over $25,000.00 and a $10,000.00 payment to the New Dawn Church. The payments to Compusult appear to be related to the software needed for the TAC website's investors' area, for the tracking of investors and payments. The payment to New Dawn Church appears to be a charitable contribution to Ms. Johnson's religious organization. Additionally, Johnson transferred $25,000.00 to ScottTrade, a brokerage firm.

37. In total, the difference between the amount received from investors and the amount returned to investors, or slated for return to investors, is **$1,580,805.56**.

38. After Johnson was contacted by the Colorado Division of Securities investigator on January 13, 2015, it is my understanding that Johnson closed the accounts at FirstBank and transferred the money to Citizens Bank.  I am not aware of a legitimate business reason for Johnson's actions.

## Payment Processor Records and Communications

39. I obtained and reviewed records from Payoneer, the only payment processor that has actually distributed funds to TAC investors.

40. The Payoneer records indicate that out of the $1,408,220.64 distributed to investors: Barnes received $102,725.00 (by far the largest payment to any investor) and Johnson received $41,400.00.

41. Additionally, I understand that Payoneer ended their relationship with TAC over concerns that TAC was operating a pyramid/Ponzi scheme.

42. Following the Payoneer termination, Johnson and Barnes have been attempting to locate a new payment processor for their scheme since TAC has been unable to disburse payments in the interim.

43. In the last few weeks, Barnes and Johnson located a new payment processor called Binary Wallet.

44. TAC transferred $840,900.00 to Binary Wallet to cover investor payments and processing fees, but my understanding is that Binary Wallet has not yet completed any investor payments.

45. Barnes has been in regular communication with Binary Wallet and has repeatedly directed Binary Wallet to complete the investor payments for TAC.

**Misappropriation of Investor Funds**

46. Johnson has withdrawn at least $153,300.00 from the FirstBank accounts for the purpose of transferring those funds to her personal account at CU of CO, and has also received $41,400.00 in payments from Payoneer.

47. Barnes has received transfers from the FirstBank accounts totaling $39,550.00 and has also received $102,725.00 in payments from Payoneer.

48. In total, Johnson and Barnes have taken a minimum of **$336,975.00** of investor funds from the TAC scheme.

49. The money that Johnson took from the FirstBank accounts and moved to her personal account at CU of CO was withdrawn in a highly irregular and suspicious manner.

50. Rather than writing checks from the FirstBank account made payable to Kristine Johnson so they could then be deposited in the CU of CO account, or making online transfers, Johnson removed the money as follows:

   a.   Johnson would go to a FirstBank branch and obtain a counter check which was made out to "cash." In eleven instances, she then cashed the counter check and

left the branch with cash in amounts varying from $1,000 to $10,000. In all eleven instances, that same day Johnson would go to a CU of CO branch and would deposit the cash. On some occasions there are $50-$100 differences between the amounts withdrawn and the amounts deposited; presumably Johnson retained some cash.

   b. In two other instances, Johnson wrote checks to "cash" from one of the FirstBank accounts, one for $90,000 and another for $20,000, and then deposited the checks at CU of CO.

   c. All of these unusual transactions, as well as copies of the checks, are captured in Exhibit G to Mr. Matticks's Declaration.

51. Once the funds were in the CU of CO account, Johnson spent the money on various personal expenses, including a new car purchased at Mike Naughton Ford on November 18, 2014 for $34,719.96 and over $25,000.00 in credit card purchases, all since June 2014. (*See* Ex. F to Matticks Decl.)

52. Much of the dissipation of investor funds has happened recently—since January 8, 2015, Johnson has transferred at least $110,000.00 to her personal accounts.

**Misstatements and Omissions**

53. In connection with offering the purchase of the "positions" in TAC, Johnson and Barnes, created various materials to pitch the program to investors. Those materials include: (1) content on the website www.readytoachieve.com, including four animated slide show videos narrated by Johnson; (2) a forty-five minute conference call with Johnson, Barnes,

and a moderator that is posted on www.readytoachieve.com; and (3) videos produced and
posted to YouTube by Barnes, soliciting investments for TAC.

54. I asked Helena M. Engelhart, a Senior Paralegal in the Division of Enforcement, to
transcribe excerpts from all three groups of materials set forth in the preceding paragraph.
In a separate Declaration, Ms. Engelhart has attached those transcriptions.

55. There are certain key statements that do not comport with the facts and therefore
constitute false statements.

56. Statements on www.readytoachieve.com and in the animated slide videos posted on that
website:

    a. "We are not a pyramid scheme." (Ex. B to Engelhart Decl.)

        i. This statement, which was made with other statements that characterize
TAC as a legitimate business, is inconsistent with the bank records.  TAC
is a pyramid scheme because it has no revenue other than investor funds
and it repays earlier investors with money from new investors.

    b. "How are we a lifetime income plan?  It's simple. For every $50.00 position that
you purchase you make $400.00.  With 2 positions you make $800.00. With 5
positions you make $2,000.00.  Wanna go bigger?  With 20 positions you make
$8,000.00.  With 100 positions you make $40,000.00.  This is limitless." (Ex. B
to Engelhart Decl.)

      i.   This statement claims that the TAC's investment potential is "limitless" when, in fact, the bank records reveal that TAC is a pyramid/Ponzi scheme, which by definition eventually becomes impossible to sustain.

   c.   "Now you and anyone you know can Make as Much Money as you want. You start with a $50 position, each $50 position pays you $400 and you can Purchase as many positions as you want. Please watch my short video that Explains what you get for your $50 and how you can make Thousands every Month from a $50 position when you have a Re-Purchase strategy." (Ex. A at 1.)

      i.   Again, this statement featured prominently on the front page of the website fails to disclose that TAC is a pyramid/Ponzi scheme, which by definition eventually becomes impossible to sustain.

57. Statements in the "Meet the Founders Recorded Call" located on www.readytoachieve.com:

   a.   Johnson speaking: "I thought, what can I do, what can I make, what can I design, that has only what works and none of what doesn't, and one day, honestly this is what happened, I just saw it. I just saw it in my head. This matrix is 3D, which is why we can't put it on paper. It's a triple algorithm. And I can't for the life of me tell you why I could figure that out in my head. But I could." (Ex. D to Engelhart Decl.)

      i.   Johnson's statement that she created a "triple algorithm" that makes the "matrix" work is inconsistent with the bank records because it

communicates that there is a mathematical way that investors can receive

the promised return, however, in reality TAC is a pyramid/Ponzi scheme,

which by definition eventually becomes impossible to sustain.

58. Statements in YouTube videos recorded by Barnes:

    a. "Get started; get one position, get at least one position, because you're going to be

    able to get as many positions as you want for as long as you want and make as

    much money as you want.  And when's the last time you heard that?  Okay, you

    can do it here.  No effort, no recruiting, no brainer."  (Ex. F to Engelhart Decl.)

        i. Barnes's statement that "you're going to be able to get as many positions

        as you want for as long as you want and make as much money as you

        want" is inconsistent with the bank records because TAC is a

        pyramid/Ponzi scheme, which by definition eventually becomes

        impossible to sustain.

    b. "know when you  purchase 10 positions that you're going to make $4,000.00, and

    then if you make $4,000.00 you can take $2,000.00 of that and repurchase

    positions you're going to make 8 times that money, okay, it's very easy to make 6

    figures here"

        i. A review of the Payoneer records reveals that out of over 7,700 records,

        the only investor who was paid "6 figures" was Barnes.  To state that it is

        "very easy to make 6 figures" in TAC is inconsistent with the Payoneer

        records.  In fact, TAC has claimed at times to have well over 10,000

investors, but has only returned $1.4 million to investors. Thus, at most, there could be 14 investors receiving "6 figures" out of thousands.

59. Barnes and Johnson also fail to disclose in any of the marketing materials that they intend to take investor money from the scheme as they see fit, and that by doing so they are guaranteeing that certain investors will never receive even their initial investment back. Because TAC does not generate revenues in any manner other than by taking in new investor funds, every dollar removed from the scheme by Johnson and Barnes is a dollar that at least one investor will lose.

60. I have also reviewed the Disclaimer language on the TAC website, a copy of which is attached as **Exhibit B**. The disclaimer fails to disclose any of the material risks of the scheme, including the fact that TAC is a pyramid/Ponzi scheme without any investment earnings or other revenue, and the fact that Johnson and Barnes are taking money out of the scheme for personal use.

61. Given the SEC's concern that, if investors were alerted to the SEC's investigation, they would quickly disseminate that information to other TAC investors, as well as Defendants, which could risk additional dissipation or misappropriation of investor funds, I have not contacted any TAC investors in preparation for filing this emergency action.

62. Due to the emergency nature of this filing, the SEC has not obtained Barnes's bank records and therefore has not determined how he has spent the misappropriated investor funds.

63. The SEC has identified bank accounts and other financial accounts at the following
entities that will be subject to the asset freeze, assuming it is granted.  Additionally, the
SEC is actively working to identify additional accounts so this list is neither exclusive nor
intended to limit the scope of any asset freeze that the Court may order.

    a.  FirstBank

    b.  Citizens Bank

    c.  Credit Union of Colorado

    d.  MetaBank

    e.  PayPal

    f.  Stripe

    g.  Binary Wallet

    h.  Payoneer

    i.  ScottTrade

I declare under the penalty of perjury that the foregoing is true and correct.

Dated: February 12, 2015

Jeffrey D. Folder



Home    Introduction    Opportunity    Strategy    Products    Founders    Contact    FAQ    Sign Up    Login

# THE ACHIEVE COMMUNITY

# WELCOME TO ACHIEVE



The Achieve Community is your place for the best marketing resources on the internet, with included training, something we think is missing in most programs out there. With your one time $50 payment you will receive an advertising banner, superior online marketing programs, access to our members area where you can get more training and resources to continue to help you as you grow your businesses. You will have support and you will have a team behind you.

But mostly we are a community. We will have live events where we can all meet, party and share our stories. We will network and grow our community. Everyone will have the opportunity to begin now to create the life you really want to live. We are so grateful that you have joined us.

Achieve is an online community that Makes you Money and Provides all the Marketing tools you need to be Successful. Now you and anyone you know can Make as Much Money as you want. You start with a $50 position, each $50 position pays you $400 and you can Purchase as many positions as you want. Please watch my short video that Explains what you get for your $50 and how you can make Thousands every Month from a $50 position when you have a Re-Purchase strategy.



# INTRODUCTION



Home    Introduction    Opportunity    Strategy    Products    Founders    Contact    FAQ    Sign Up    Login



GET YOUR POSITION NOW

## NOW ANYONE CAN LIVE THEIR

## DREAM!

   Home   Introduction   Opportunity   Strategy   Products   Founders   Contact   FAQ   Sign Up   Login

# OPPORTUNITY





GET YOUR POSITION NOW

When you sign up you will get an email with your login information and the link to our update blog.

# STRATEGY





*All our dreams can come true, if we*

*have the courage to pursue them.*

# PRODUCTS



We have a library of marketing products and training for you with new products every month. With your membership you
will receive access to the entire library. You can access the videos or download the ebooks instantly from your back office
once you have joined.

In addition to the library of products and training, you will receive an Advertising Banner with each $50 purchase in Achieve. These banners can be used for any business you currently promote and can be purchased in amounts of one to one hundred, training is included with this product.



*ACHIEVE*          Home   Introduction   Opportunity   Strategy   Products   Founders   Contact   FAQ   Sign Up   Login

# FOUNDERS

Meet the Founders Recorded Call

The Best Network Marketing Opportunity - The Achieve Community International          Page 7 of 7



TROY BARNES                                                      KRISTI JOHNSON

Home    Introduction    Opportunity    Strategy    Products    Founders    Contact    FAQ    Sign Up    Login

*I always knew there would be a way for everyone to have Success in this Industry. I met Kristi and together we Created a way. The Achieve Community. Created for the People by the People. We are looking forward to seeing Each and every one you have Success and Better your Lives here in the Achieve Community. To Your Success*

—**Troy Barnes**

*It is absolutely true that we can live our lives in possibility. And everything is possible. Every soul that comes here makes a difference. Troy and I designed our Achieve Community program to create a place for you to do all that is possible for you, and live a full out life that serves us you and all you care about. Together we will change our World.*

—**Kristi Johnson**

## Don't Be Shy. Get In Touch.

If you are interested in working together, send us an inquiry and we will get back to you as soon as we can!

Contact Us

Disclaimer | Privacy Policy | Terms of Service Copyright © 2014 - Work With Troy Barnes, Inc          **f**

# U. S. SECURITIES AND EXCHANGE COMMISSION

Investigation # D-03502

### DECLARATION OF Russell Castillo

Pursuant to 28 U.S.C. Section 1746, the undersigned states as follows:

1.  My name is Russell Castillo I am over twenty-one years of age and have personal knowledge of the matters set forth herein.

2.  I am assigned as an IT Specialist to the U.S. Securities and Exchange Commission's Division of Enforcement in Washington, D.C.  As part of my duties I am tasked to conduct a Website Capture.

3.  In support of investigation number D-03502, and at the direction of my supervisor, I was tasked to conduct Website/video capture of the following URL's.

    https://www.youtube.com/watch?v=2-DqkqPW-gk

    http://theachievecommunity.com/

    http://readytoachieve.com/

4.  To complete the above mentioned website/video capture the following tools were used:

    Adobe Acrobat Pro, Offline Explorer Pro 6, Download Helper Mozilla Firefox, Format Factory

5.  After each website/video was captured, a CD/DVD containing the identified web capture was produced to
    or
    After each website/video was captured for the above criteria, It was stored on a network share in which the location was provided by Jeffrey Felder. The location that was provided is as follows:

    \\ad\enfdataexchange\HQtoDRO_dropoff\Web Captures

6.  Any additional comments related to this Website/video capture are provided below:


I declare under penalty of perjury that the foregoing is true, correct, and made in good faith.

Russell Castillo
[Analyst Name]                                    Executed on this 4th day of February 2015.

Disclaimer | The Achieve Community                                      Page 1 of 1



Home    Introduction    Opportunity    Strategy    Products    Founders    Contact    FAQ    Sign Up    Login

# Disclaimer

Earnings Disclaimer

Every effort has been made to accurately represent this service and its potential. There is no guarantee that you will earn any money using the techniques and ideas in these materials. Examples in these materials are not to be interpreted as a promise or guarantee of earnings. Earning potential is entirely dependent on the person using our service, ideas, and techniques. We do not purport our services as a way to "Get rich quick." Your level of success in attaining the results claimed in our materials depends on the time you devote to the program, ideas and techniques mentioned, your finances, knowledge and various skills. Since these factors differ for each individual, we cannot guarantee your success or income level, nor are we responsible for any of your actions. Materials in our service and our website may contain information that includes or is based upon forward-looking statements within the meaning of the securities litigation reform act of 1995. Forward-looking statements give our expectations or forecasts of future events. You can identify these statements by the fact that they do not relate strictly to historical or current facts. They use words such as "anticipate," "estimate," "expect," "project," "intend," "plan," "believe," and other words and terms of similar meaning in connection with a description of potential earnings or financial performance. Any and all forward looking statements here or on any of our sales materials are intended to express our opinion of earnings potential. Many factors will be important in determining your actual results and no guarantees are made that you will achieve results similar to ours or anybody else's, in fact no guarantees are made that you will achieve any results from the ideas and techniques in our materials.

**Disclaimer | Privacy Policy | Terms of Service** Copyright © 2014 - Work With Troy Barnes, Inc.                    **f**

